**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Antoine Lee, | Civil No. 11-1945 (DWF/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Officer Oscar Macias and Office Shawn Kelly, in their official and individual capacity, and City of Minneapolis, | |
| Defendants. | |

A. L. Brown, Esq., Capitol City Law Group, LLC; and Joshua R. Williams, Esq., Law Office of Joshua R. Williams, PLLC, counsel for Plaintiffs.

Timothy S. Skarda, Assistant Minneapolis City Attorney, Minneapolis City Attorney's Office, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on a Motion for Partial Summary Judgment on the Issue of Liability brought by Plaintiff Antoine Lee ("Plaintiff"). (Doc. No. 9.) In his Complaint, Plaintiff asserts violations of 42 U.S.C. § 1983 for deprivation of liberty (false arrest, unreasonable seizure, and unlawful detention) (Count One) and excessive force (Count Two), as well as state-law claims for false arrest and false imprisonment (Count Three), intentional infliction of emotional distress (Count Four), battery (Count Five), civil conspiracy to violate civil rights (Count Six), and violation of the Minnesota

Human Rights Act ("MHRA") (Count Seven).  Plaintiff moves for partial summary judgment on Counts One, Two, Three, Five, and Six.[1]  For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

At approximately 12:30 a.m. on March 21, 2009, Plaintiff was walking with a female, G.J., near the intersection of 31st Street and Bloomington Avenue in Minneapolis, Minnesota.  (Doc. No. 1, Compl. ¶ 6.)  Plaintiff and G.J. separated near this intersection, allegedly to get take-out food from different restaurants.  (*Id.* ¶ 7.)[2]

While on a routine patrol in a fully-marked squad car, at approximately 12:40 a.m., Defendants Officer Shawn Kelly and Officer Oscar Macias (together, "Defendants" or the "Officers") observed G.J. standing at the northeast corner of Bloomington Avenue South and 31st Street.  (Doc. No. 12, Williams Decl. ¶ 2, Ex. A ("Police Report") at 3.)  G.J. caught the Officers' attention because she did not appear to have any purpose for being in the area, she was wearing what they perceived to be provocative clothing,[3] and the area was known for street level prostitution.  (*Id.* at 3, 6;

---

[1]   Because Plaintiff moves for summary judgment, the Court must consider the facts in the light most favorable to Defendants, the non-moving parties.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).

[2]   The Officers submit, via affidavit testimony, that there are no restaurants or fast food outlets at this intersection.  (Doc. No. 15, Kelly Aff. ¶ 10; Doc. No. 16, Macias Aff. ¶ 8.)

[3]   G.J. had her jacket unzipped with a corset underneath that barely covered her breasts.  (Kelly Aff. ¶ 12; Police Report at 3, 6.)

Kelly Aff. ¶¶ 4, 12; Macias Aff. ¶ 4.)  G.J. did not cross the intersection after receiving green lights in both the southbound and westbound directions.  (Police Report at 3, 6; Kelly Aff. ¶ 13.)  The Officers stopped to speak with G.J.  (Kelly Aff. ¶¶ 14-15; Macias Aff. ¶ 9; Police Report at 3, 6.)  At the time the Officers approached, G.J. was on her cell phone and the Officers overheard her saying that she needed to be picked up and giving her location to the person with whom she was speaking.  (Kelly Aff. ¶ 18; Police Report at 3.)  G.J. told the Officers that she had been smoking marijuana, engaging in sexual activity, and that she did not know where she was going.  (Kelly Aff. ¶ 17; Macias Aff. ¶ 9; Police Report at 3, 6.)  She also told the Officers that she was a police informant, but was unable to give any other details to confirm her status as an informant.  (Police Report at 3, 6.)  G.J. told the Officers that the person on the phone was coming to pick her up.  (Kelly Aff. ¶ 18.)

Approximately three minutes later, Plaintiff walked up to the scene but remained behind a bus-stop bench that was approximately eight feet from the Officers and four feet from G.J.  (Kelly Aff. ¶ 19; Macias Aff. ¶ 11; Police Report at 4, 6.)  Plaintiff appeared to have both of his hands in his pockets.  (Kelly Aff. ¶ 20; Macias Aff. ¶ 14.)  The Officers could not see Plaintiff's hands.  (Macias Aff. ¶ 20.)

The Officers asked both Plaintiff and G.J. if they knew each other.  (Kelly Aff. ¶ 21; Macias Aff. ¶ 13.)  Plaintiff and G.J. gave conflicting statements:  G.J. claimed that Plaintiff was her boyfriend; and G.J. claimed that he did not know Plaintiff.  (Kelly Aff. ¶ 21; Macias Aff. ¶ 13; Police Report at 4, 6.)  The Officers again asked Plaintiff if he knew G.J. and Plaintiff maintained that he did not.  (Macias Aff. ¶ 13; Police Report

3

at 4, 6.) Defendants assert that Plaintiff was "fidgeting around" and watching the Officers' interaction with G.J. (Macias Aff. ¶ 15.)

The Officers claim that they were concerned for their safety because they could not see Plaintiff's hands, and they had been trained to be concerned about hands concealed in pockets because of possible access to handguns or contraband. (Kelly Aff. ¶ 22.) Other circumstances added to their concern, including the fact Plaintiff and G.J. gave conflicting information regarding whether they knew each other, the incident occurred late at night in an area with frequent criminal activity, Plaintiff was fidgeting and watching the interaction with G.J., and Plaintiff was partially concealed by the bus-stop bench. (Macias Aff. ¶ 15.)

The Officers approached Plaintiff and asked him to show them his hands. (Kelly Aff. ¶¶ 27-28; Macias Aff. ¶ 16; Police Report at 4, 6.) Plaintiff refused and replied, "I don't have to show you shit." (Macias Aff. ¶ 3; Police Report at 4, 6.)[4] The Officers repeated their request, and Plaintiff again refused to comply. (Macias Aff. ¶ 19.) Officer Macias then reached towards Plaintiff and removed Plaintiff's left hand from his pocket. (*Id*. ¶ 20.) Officer Macias still could not see Plaintiff's right hand. (*Id*.) Plaintiff removed his right hand from his pocket and pushed away from the bus-stop bench. (*Id*. ¶ 22.) The Officers then held Plaintiff's hands behind his lower back and pinned him against the bus-stop bench. (*Id*. ¶ 24.) Officer Kelly grabbed Plaintiff's right wrist.

---

[4] Officer Macias contends that his concern was heightened by Plaintiff's response and level of hostility. (Macias Aff. ¶ 17.)

(Kelly Aff. ¶ 30.) Officer Macias told Plaintiff to calm down. (Macias Aff. ¶ 25; Kelly Aff. ¶ 30.) Plaintiff continued to struggle. (Kelly Aff. ¶¶ 30-31; Macias Aff. ¶ 25; Police Report at 4, 6.)

The Officers decided to walk Plaintiff to their squad car. (Kelly Aff. ¶ 31; Macias Aff. ¶ 26; Police Report at 4, 7.) Plaintiff began to struggle again. (Kelly Aff. ¶ 31; Macias Aff. ¶ 27; Police Report at 4, 7.) Officer Kelly told Plaintiff to calm down. (Kelly Aff. ¶ 31; Police Report at 4.) Plaintiff began to slip out of Officer Kelly's wrist lock. (*Id.*) Officer Macias grabbed the back of Plaintiff's shirt and pulled him to the ground. (Macias Aff. ¶ 28.) Officer Kelly lost control of Plaintiff's arm, and when on the ground, Plaintiff moved his left hand towards his waistband. (Kelly Aff. ¶¶ 33-34; Macias Aff. ¶ 30; Police Report at 4, 7.) Officer Kelly delivered one knee strike to Plaintiff's left side and Officer Macias struck Plaintiff once in the face. (Kelly Aff. ¶ 36; Macias Aff. ¶ 35.) Defendants handcuffed, pat searched, and placed Plaintiff in the squad car. (Kelly Aff. ¶ 36; Macias Aff. ¶ 36.) Plaintiff was neither arrested nor issued a citation. (Macias Aff. ¶ 40.) An ambulance arrived and took Plaintiff to Hennepin County Medical Center. (Kelly Aff. ¶ 40.) Plaintiff claims that he suffered major injuries. An incident report was referred for the consideration of criminal charges against Plaintiff; none were issued. (Macias Aff. ¶ 41.)

## DISCUSSION

### I.   Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

5

Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d at 747. However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Unlawful Seizure Under 42 U.S.C. § 1983

Plaintiff asserts that he was unlawfully detained and unreasonably seized in violation of his Fourth Amendment rights. Plaintiff argues that at the time the Officers seized him, there was no indication that he had committed, or was about to commit, a crime. Plaintiff also asserts that he had the right to refuse the Officers' request that he

show his hands. Plaintiff asserts, based on these facts, that there was no basis under *Terry v. Ohio*, 392 U.S. 1 (1968), to stop and later search him.

Under the Fourth Amendment, it is permissible for an officer to make a brief investigatory stop if he has a reasonable articulable suspicion that criminal activity is afoot. *United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1999) (citing *Terry*, 392 U.S. at 21-22). Circumstances that may justify reasonable suspicion must be examined in totality, and reasonable suspicion may be justified even when there are innocent explanations for the defendant's behavior. *Tuley*, 161 F.3d at 515. In examining the totality of circumstances, the Court must consider the extent to which an officer is drawing upon his own experience and training. *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). In addition, relevant contextual considerations include whether the location is in an area known for criminal activity, and nervous or evasive behavior. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate to the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Royer*, 460 U.S. 491, 500 (1983).

Officers conducting investigative stops "may take steps reasonably necessary to protect their personal safety." *United States v. Stachowiak,* 521 F.3d 852, 855 (8th Cir. 2008) (quotation omitted). A protective frisk is warranted if "specific articulable facts taken together with rational inferences support the reasonable suspicion that a party was potentially armed and dangerous." *United States v. Ellis,* 501 F.3d 958, 961 (8th Cir.

7

2007) (quotation omitted).  The question is an objective one:  "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *Id*. (citation omitted).

Defendants contend that their actions were reasonable and permissible under the law.  As an initial matter, Defendants assert that these facts do not fall under the standard of *Terry* because Plaintiff was not seized or searched until *after* he began to physically resist.  Plaintiff argues that Defendants seized Plaintiff when they flanked him and physically forced compliance with their order for him to show his hands.  "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Terry*, 392 U.S. at 20 n.16.  Here, when Defendants physically forced compliance with their request that Plaintiff show his hands, a reasonable person would not feel free to leave.  Thus, the Court concludes that a seizure occurred and *Terry* applies.

Defendants argue that even if *Terry* applies, their actions were permissible.  Defendants assert that they requested to see Plaintiff's hands because they were concerned about their safety when they were questioning G.J.  Defendants also assert that they did not intend to arrest Plaintiff when they approached him, and that their only motivation was to convince Plaintiff to show his hands.  The Officers claim that their safety concerns were based not only on Plaintiff's repeated refusal to show his hands, but on additional circumstances.  These circumstances include Plaintiff's arrival on the scene and close proximity to G.J. and the Officers; the fact that Plaintiff was partially concealed by the bus-stop bench; the fact that G.J. and Plaintiff gave conflicting information

regarding their relationship; the fact that Plaintiff was fidgeting; that the encounter happened late at night in an area known for criminal activity; and the fact that the Officers had been trained to be concerned about the potential for concealed weapons. Defendants further assert that Plaintiff was free to either comply with their request to show his hands or to leave, but that Plaintiff refused to show his hands and remained at the scene. Defendants maintain that they chose the least intrusive method available to them—to remove his hand from his pocket.[5]

Even when viewing the evidence in the light most favorable to Defendants, the Court concludes that no reasonable juror could find that Defendants' actions in removing Plaintiff's hand from his pocket were lawful under *Terry*. In particular, no reasonable juror could conclude, based on the evidence in the record, that the Officers had reasonable suspicion that criminal activity was afoot and that Plaintiff was armed and dangerous. The Court takes particular note of Officer Macias' affidavit testimony that Plaintiff had committed no crime until he began to struggle with the Officers. (Macias Aff. ¶ 18.) In addition, the Court notes the lack of any record evidence to support a reasonable suspicion that Plaintiff was engaged in criminal activity. Moreover, the Court

---

[5] Defendants do not seek summary judgment on qualified immunity grounds, but contend that Plaintiff's motion must be considered in light of the potential protection afforded by qualified immunity. Qualified immunity shields government officials as well as private individuals from civil liability under 42 U.S.C. § 1983. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

9

concludes that the Officers have not shown that they should be shielded by qualified immunity because a reasonable officer would have known that seizing Plaintiff in the absence of a reasonable suspicion of criminal activity violated clearly established Fourth Amendment principles. Accordingly, the Court grants Plaintiff's motion for summary judgment on his unlawful seizure claim and finds, as a matter of law, that the Officers violated Plaintiff's rights under the Fourth Amendment.

### B.  Excessive Force Under 42 U.S.C. § 1983

Plaintiff also asserts excessive force claims against Officers Kelly and Macias. Specifically, Plaintiff asserts that the Officers' initial use of force at the time they removed his hand from his pockets violated his Fourth Amendment rights because they used force when no force was necessary. In essence, Plaintiff argues that the use of force was objectively unreasonable because the initial alleged seizure of Plaintiff was unlawful under *Terry*. Defendants, on the other hand, assert that the force to remove his hand from his pocket was constitutional and the force used to subdue Plaintiff was not excessive. Defendants also contend that the analysis of whether the force of removing Plaintiff's hand from his pocket was excessive must be viewed through the filter of qualified immunity.

The right to be free from excessive force is clearly established under the Fourth Amendment's prohibition of unreasonable seizures of the person. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The Court evaluates excessive force claims under an objective-reasonableness test. *Id*. at 397. In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality

10

of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id.* at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id.*

In light of the Court's conclusion that the Officers unlawfully seized Plaintiff when they removed his hand from his pocket, the Court also concludes that the Officers used excessive force in doing so. Because the Officers had no lawful basis to seize Plaintiff under *Terry*, the use of any force in doing so is not justified and therefore unreasonable. Still, the Court notes that even though Plaintiff has established that the Officers' actions in removing Plaintiff's hand from his pocket were unlawful, Plaintiff's potential damages are likely minimal. There is no right to resist even an unlawful arrest. *See, e.g.*, *Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003) (explaining that in Minnesota, there is no right to resist an unlawful search or arrest) (citations omitted). Thus, damages are unlikely to be awarded as a result of any force used after Plaintiff resisted.[6]

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[6] Plaintiff moves for summary judgment on certain state-law claims but does not offer any separate argument in support. Therefore, Plaintiff's motion as to these claims is denied, and the claims remain for trial along with the issue of damages.

      1.      Plaintiff's Motion for Partial Summary Judgment (Doc. No. [9]) is **GRANTED** with respect to Plaintiff's claim for unlawful seizure under Count One and Plaintiff's claim for excessive force under Count Two.

      2.      Plaintiff is entitled to judgment as to his claim that the Officers violated his Fourth Amendment right to be free from unlawful seizures and that they utilized excessive force, insofar as those claims are based on the Officers' actions in removing Plaintiff's hand from his pocket.

      3.      Plaintiff's Motion for Partial Summary Judgment (Doc. No. [9]) is **DENIED** with respect to Counts Three, Five, and Six.

Dated:  June 12, 2012                      s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge